449 P.2d 369

STATE of Idaho, Plaintiff-Respondent,

v.

Arthur ROSS, Defendant-Appellant.

No. 10121.

Supreme Court of Idaho.

Dec. 31, 1968.

710

Gigray, Boyd & Downen, Caldwell, for defendant-appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, C. Robert Yost, Pros. Atty., Caldwell, for plaintiff-respondent.

SMITH, Chief Justice.

Appellant has appealed from a judgment of conviction on three counts each charging the commission of "a lewd act upon and with a part of the body of a minor child * * * under the age of 16 years." I.C. § 18–6607.[1]

The circumstances of the charged offenses were the same or similar on all three occasions. The record indicates that on July 26, 1966, appellant either enticed or coerced into his garage five year old Tammy _____ (count 1), and on that date and on August 8, 1966, six year old Tracy _____ (counts 2 and 3) and then placed his hand inside the panties of each child and fondled her "private parts." Each incident supposedly occurred about the noon hour. The children suffered no physical harm.

Appellant was arrested and charged with the offenses. He was interrogated by the sheriff and prosecuting attorney of Canyon County. The details and procedure of this interrogation are later discussed.

After the jury found appellant guilty on all three counts, and after a pre-sentence investigation, the court entered its judgment of conviction. The court then meted out concurrent sentences of penal servitude of ten years on each of the three counts.[2]

Appellant assigns error committed by the trial court:

1. In denying appellant's motion for a new trial because of insufficency of the evidence to show that appellant had committed a criminal act because of,—

Incompetency, inconsistency and insufficient corroboration of the testimony of the prosecution's witnesses;

Appellant's defense or an alibi was not rebutted by the state;

Appellant established a possible ulterior motive for the prosecution.

2. In denying a motion for a new trial because the state's evidence failed to establish the necessary element of "intent" required by I.C. § 18–6607.

3. In refusing to exclude statements which appellant made to the sheriff on the ground that appellant's guaranteed constitutional rights had been violated.

4. In giving jury instruction No. 6.

5. In denying appellant's request for probation.

6. In sentencing appellant to 30 years servitude in the penitentiary.

Appellant contends that the two girls—prosecution's witnesses—were not competent to testify in that they were under 10 years of age and appeared "incapable of receiving just impressions of the facts

---

1. 18–6607. Lewd conduct with minor or child under sixteen.—Any person who shall wilfully and lewdly commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child, shall be guilty of a felony and shall be imprisoned in the State Prison for a term of not more than life.

2. Although the judgment of conviction makes no mention whether the sentences are to run concurrently or consecutively, I.C. § 18–308 provides:
   "Successive terms of imprisonment.— When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be."

respecting which they are examined, or of relating them truly," citing I.C. § 9–202.[3] Appellant argues that if that testimony is stricken, or is given the merited minimal weight, then the state has not met its burden of proof of the charged offenses.

Estate v. Allen, 70 Wash.2d 690, 424 P.2d 1021 (1967), dealt with RCW 5.60.50, which in pertinent part is the same as I.C. § 9–202. In that case the supreme court of Washington established the following test for competency in deciding that a six year old girl could testify as prosecuting witness regarding the defendant having taken indecent liberties with her person:

> "The true test of the competency of a young child as a witness consists of the following: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

> "The determination of the witness's (sic) ability to meet the requirements of this test and the allowance or disallowance of leading questions [citation] rest primarily with the trial judge who sees the witness, notices his manner, and considers his capacity and intelligence. These are matters that are not reflected in the written record for appellate review. Their determination lies within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion. * * *."

See also State v. Smith, 16 Utah 2d 374, 401 P.2d 445 (1965); see State v. Harp, 31 Idaho 597, 173 P. 1148 (1918).

Turning first to Tammy's testimony, we find no error in allowing its admission. Her testimony was halting and sometimes contradictory, and in instances the record indicates "no response," but nevertheless, it was consistent as regards the offense in question. Appellant asserts that the child did not know the difference between telling the truth and not telling the truth or between right and wrong. But when questioned as to what she spoke, when she related something which actually happened, she replied, "The truth." And she responded that it was "a lie" if she told "something that just didn't happen." She stated that she knew what had happened and was telling the truth, and the fact that she may not have understood the nature and obligation of an oath would not render her incapable of testifying. State v. Harp, supra.

Most of the inconsistencies in the testimony of both children involved quantitative analyses. How many times had you been present on appellant's property? How long did appellant hold his hands on you? How many times did your family go on picnics? What time of the day did the events take place—morning or noon? These classify into the categories of numbers and relative time. It is not surprising that the testimony of the children was somewhat confused and inconsistent as to those matters.

However, as to the events constituting the statutory offense in question, the testimony of Tammy was quite consistent. Her crucial testimony was as follows:

> "Q. What did he do?
>
> * * * * * *
>
> "A. Put his hands down my pants.
>
> "Q. And then what did he do?
>
> "A. On my crotch.

---

3. "9–202. Who may not testify.—The following persons cannot be witnesses:
    * * * * *
    2. Children under ten (10) years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly.
    * * * * *"

\* \* \* \* \* \*

"Q. Where is your crotch?

"A. Between my legs.

\* \* \* \* \* \*

"Q. (W)as the hand inside or outside of the underpanties?

"A. Inside.

\* \* \* \* \* \*

"Q. And what did he do with his hand while his hand was between your legs?

"A. He rubbed my crotch."

■ Regarding the testimony of Tracy, appellant raises the same basic objections. Here again, the inconsistencies concern the time of day at which the events occurred, but not the facts essential to the crimes. In the preliminary hearing, Tracy testified that she yelled, that appellant held his hand over her mouth, and that he cautioned her to tell no one about the incident. At the trial she repeated that testimony, but omitted mention of any outcry. These inconsistencies did not make her incapable of testifying, within the meaning of I.C. § 9–202. If anything, although the younger of the two children, her testimony was the more concise of the two. It would serve no purpose to produce extracts of that testimony here. We hold that she, too, was competent to testify.

■ Given the admitted inconsistencies in the testimony of the minor children —the prosecution's witnesses—appellant contends that the evidence is insufficient to show that a crime was committed or that it was committed on these witnesses. This court, however, has repeatedly held that the credibility of witnesses and the weight to be accorded their testimony is exclusively for the jury, and where there is competent, though conflicting, evidence to sustain a verdict, the court cannot reweigh the evidence or disturb the verdict. State v. Pruett, 91 Idaho 537, 428 P.2d 43 (1967);

State v. Booton, 85 Idaho 51, 375 P.2d 536 (1962); State v. Harp, supra; State v. Berry, 101 Ariz. 310, 419 P.2d 337 (1966). It is not for this court to review the minor inconsistencies in the testimony of children, provided the inconsistencies could have been considered by the jury and there was no abuse of discretion by the trial judge in admitting the testimony. People v. Cook, 136 Cal.App.2d 442, 288 P.2d 602 (1955); People v. Cox, 104 Cal.App.2d 218, 231 P.2d 91 (1951); Cf. State v. Harp, supra.

■ Appellant then asserts that even if the testimony of the girls is admissible, there could be no conviction based on it since the corroboration thereof was insufficient. Cases decided by this court establish the proposition that corroboration of the prosecutrix' testimony is necessary to sustain a conviction under I.C. § 18–6607. State v. Tope, 86 Idaho 462, 387 P.2d 888 (1963); State v. Madrid, 74 Idaho 200, 259 P.2d 1044 (1953); State v. Elsen, 68 Idaho 50, 187 P.2d 976 (1947); State v. Short, 39 Idaho 446, 228 P. 274 (1924). State v. Elsen, supra, announces the rule:

"If the character or reputation of the prosecutrix for truth and chastity is unimpeached, and her testimony is not contradictory nor (sic) inconsistent with the admitted facts of the case, and is not inherently improbable nor (sic) incredible, there can be either direct evidence corroborating her testimony, or evidence of surrounding circumstances clearly corroborating her statements. Either will suffice. If, however, her character or reputation for truth and chastity, or either, is impeached, or her testimony is contradictory or is inconsistent with the admitted facts of the case, or is inherently improbable or incredible, then there must be direct evidence corroborating her testimony." [4]

The sheriff testified as to certain admissions which appellant made during an August 15, 1966, interrogation before the

4. For a commentary questioning the wisdom of such detailed definition of the corroboration necessary, see 7 Wigmore on Evidence §§ 2061–2062 (3d ed., 1940).

prosecuting attorney and the sheriff. As set out below, they furnish sufficient corroboration of the testimony of the girls. See 1 Wigmore on Evidence, § 25 (3d ed., 1940):

"Q. Will you state what that conversation was?

"A. There was conversation as to where it occurred. He [appellant] said it was at his garage when he was living out on South Tenth Street, or out there at Winchester's * * He said that he hadn't did (sic) this in a long time, and he wouldn't have done it any more even if he hadn't been arrested. He was very sorry that he did it, and he was asked if he, if his family knew about it, if his wife knew about, and he said, 'no,' he hadn't said anything because he didn't think he would ever have done it any more. He said he didn't really do it to injure the children and that he didn't mean any harm by it. There was a conversation as to what he [appellant] did. He said that he put his hand down inside their panties, and played with them. He was asked if he played with their private parts, and he said, 'Yes.'"

The state, on oral argument, recognized that in order for this conviction to stand, the sheriff's testimony as to appellant's admissions must be held as admissible under the standard established by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 10 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

▮▮▮▮ The Miranda and contemporary cases establish certain general standards. Once a suspect has been taken into custody (i. e., once the police have in any way detained him), he must be warned of his rights; but that is not all. If the suspect is questioned while no lawyer is present to represent him, then the state must affirmatively show that the suspect made a knowing and affirmative waiver of his rights. Correct warnings and positive waiver—these are *absolute prerequisites* to the admissibility of *any statement* made by a suspect during interrogation without the presence of a lawyer. Mr. Chief Justice Warren's words, enunciated in Miranda, leave no room for doubt as to what is required:

"The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation.

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense.[5] The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." 384 U.S. 436, 476, 86 S.Ct. 1602, 1629.

Given this basic standard, we now turn to the question of what constitutes compliance, as a practical matter, by police in beginning the interrogation process.

The supreme court of the United States, in the Miranda case, provided its own general summary:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence

---

5. The statements by appellant in the case at bar fall into the second of these categories.

and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. at 478–479, 86 S.Ct. at 1630.

▪ The four warnings which must be given prior to the interrogation are: (1) the accused must be told that he has the right to remain silent, and that he is under no compulsion to discuss anything with the officers if he does not so desire; (2) he must be informed that if he does say anything to the officers, such may be used as evidence against him in a court of law. This is to apprise him of the possible consequences of the waiver of his right to remain silent; (3) he must be informed that he has the right to consult with a lawyer, *and* that he may have the lawyer with him during the interrogation. There is no prerequisite that the accused make a request to bring this right into play; the police *must* inform him of this right; (4) and finally, the police must inform him that if he cannot afford an attorney, one will be appointed for him free of charge prior to any questioning.[6]

▪ ▪ Appellant's testimony as regards the interrogation in the sheriff's office appears as follows:

"A. * * * I wasn't obligated to answer any questions. You [the prosecuting attorney] told me so yourself.

"Q. And you remember then that you were told by both the Sheriff and I (sic) that you need not talk to us?

"A. Yes, both of you told me that.

"Q. Did we not also, or did not the Sheriff tell you that anything that you said would be used against you in a court of law?

"A. That could have been said, * * *

*       *       *       *       *       *

"Q. And did you remember that the Sheriff advised you that you could call an attorney before you talked to us and that you had a right for (sic) an attorney?

"A. I believe that's true, yes, but I wasn't given an opportunity to call one.

"Q. Did you ask to call an attorney?

"A. I don't remember having said that, * * *

*       *       *       *       *       *

"Q. Now, what did the Sheriff tell you as to your rights as an accused person?

"A. He said, 'I will have to tell you that you're entitled to an attorney,' and that was all. There wasn't any elaboration on that. He said if I couldn't afford one the State of Idaho would furnish one, and that was all."

In short, appellant's admissions demonstrate conclusively that the required Miranda warnings were completely and com-

---

6. For the discussion of the warnings set forth by the Supreme Court of the United States, see the Miranda case, 384 U.S. 436, 468–472, 86 S.Ct. 1602.

petently given. His testimony also indicated that he amply understood their content and meaning.

Turning to the question whether appellant waived his fifth amendment privilege, one finds the following language in the Miranda case:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977, 986. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

> "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77 (1962), is applicable here:

> " 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

Here, the record is far from silent as to waiver. In fact, as the district judge pointed out, it became a question of credibility of witnesses. The sheriff testified that at the conclusion of the above mentioned warnings, appellant said, "I don't need an attorney. I did it." When asked at the trial whether he had indeed made such a statement, appellant testified "That's ridiculous. I wouldn't make a statement like that." He also stated had he known that he had a right to a lawyer during the interrogation, he certainly would have had one, since he had sufficient funds, Since the trial judge overruled the objection of counsel to the admission into evidence of appellant's statements allegedly made during interrogation, and since there is direct evidence in the record of his waiver, the finding of the trial court that there was an explicit waiver will not be disturbed on appeal. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); Abercrombie v. State, 91 Idaho 586, 428 P.2d 505 (1967).

In short, we hold that the Miranda requirements were met; therefore, appellant's admissions made while under interrogation were properly admitted into evidence. It appears herein that the law enforcement officers admirably complied with constitutional procedural standards in the courts.

Appellant contends that there was no showing that the alleged lewd conduct was committed "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child," as required for conviction under I.C. § 18–6607 (see footnote 1). Appellant argues that intent is the essence of the crime. Intent, of course, is an element of an offense defined by I.C. § 18–6607. In the case at bar, there was ample testimony as to the events themselves. This court has ruled, in State v. Johnson, 74 Idaho 269, 261 P.2d 638 (1953), a case which involved an offense charged

under I.C. § 18–6607, that intent may be shown from the commission of the acts and the surrounding circumstances. We held there as follows:

"A person necessarily intends the probable, natural consequences of his own voluntary acts. The only yardstick by which one's intent can be determined is his external acts and conduct, what he does and what he says, and one cannot excuse the probable consequences of one's own voluntary act by claiming that he had a mental reservation and performed the act or acts voluntarily done without an intent. Intent is manifest by the sound mind and discretion of the person accused, and the intent of appellant to do what the jury found he did, is sufficiently established by the commission of the acts and the circumstances surrounding them."

See also State v. Rutten, 73 Idaho 25, 245 P.2d 778 (1952); Cf. State v. Booton, supra. The trial court gave two jury instructions concurning intent,[7] and they sufficiently covered the subject. As in State v. Johnson, supra, the intent of the accused is amply shown by the acts and surrounding circumstances, and the jury by its verdict, found that the requisite intent existed. We see no reason to overrule that finding.

■ Appellant asserts error in the giving of jury instruction No. 6 (see footnote 7) by including therein the statement that "every person of sound mind is presumed to intend the natural and probable conse-

quences of his acts." Appellant's arguments are answered by State v. Johnson, supra, and particularly by the hereinbefore quoted portion of that decision. The instruction was proper.

■ Appellant asserts that his alibi, i. e., that he was at work at the time of the alleged offenses, was not properly considered. The jury heard the testimony that appellant did "punch in" and "punch out" at work at the normal times on the days in question, that he was not missed at work and that he always ate lunch with a friend. However, the alibi was not conclusive as to the appellant's whereabouts at the times and on the dates in question, and indeed appellant does not so contend. In such an instance the alibi is merely evidence to be weighed together with other evidence by the jury in arriving at its verdict.

■ Appellant also argues that he established "a possible alternative motive" for his prosecution in that there had been problems and occurrences of certain incidents between appellant's family and the family of the prosecution's witnesses. Again however, this was an issue which the jury resolved against appellant.

■ As we have already stated, where there is substantial and competent, though conflicting, evidence to sustain a verdict, this court cannot reweigh the evidence or disturb the verdict. State v. Pruett, supra; State v. Booton, supra; State v. Johnson, supra.

7. "INSTRUCTION NO. 5. The laws of the State of Idaho provide that any person who shall wilfully and lewdly commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child, shall be guilty of a felony."

"INSTRUCTION NO. 6. In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence.

"The intent with which an act is committed being but a mental state of the

party committing it, direct proof of such intent is not required, but the intent is generally derived from and established by the attending facts and circumstances, and the conduct of the defendant, as shown by the evidence.

"The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity.

"Every person of sound mind is presumed to intend the natural and probable consequences of his acts."

Appellant contends that the trial court erred in denying his request for probation. The court may in its discretion place a defendant on probation. I.C. § 19–2601.[8]

█ The record shows that the court caused psychiatric studies and evaluations to be made of appellant, and caused to be made available for review his police records from various sources. After review of those records, we cannot say that the court abused its discretion in denying probation to appellant. See Franklin v. State, 87 Idaho 291, 392 P.2d 552 (1964); State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1915).

█ Appellant assigns error committed by the trial court in sentencing him to 30 years servitude in the penitentiary.

The court, by its judgment of conviction, sentenced appellant to an indeterminate sentence not to exceed 10 years on each of the three counts. I.C. § 18–308 (see footnote 1) would require these sentences to run consecutively; and the judgment does not provide that they run concurrently. Under all of the circumstances of this case it is the consensus of this court that a total indeterminate sentence of 30 years of penal servitude is unduly harsh and that the sentences on each of the three counts should run concurrently. I.C. § 19–2821.[9]

The judgment of conviction is affirmed, but the sentence structure thereof is ordered modified to provide that the sentences of 10 years penal servitude on each of the three counts run concurrently.

Judgment affirmed as so modified and cause remanded with instructions to enter modification of the judgment accordingly.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.

8. 19–2601. "Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the State, except those of treason or murder, the court *in its discretion,* may:

    *     *     *     *     *

    3. Withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation. * * *" (Emphasis supplied)

9. 19–2821. "Disposition of appeal.—The court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."