645 P.2d 363

The STATE of Idaho, Plaintiff-Respondent,

v.

Louis Andrew MONROE, Defendant-Appellant.

No. 12532.

Supreme Court of Idaho.

May 12, 1982.

William F. Gigray, III of Gigray, Miller, Downen & Weston, Caldwell, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Arthur James Berry, III, Asst. Atty. Gen., and Howard W. Carsman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On appeal this Court affirmed the defendant-appellant's conviction in *State v. Monroe*, 101 Idaho 251, 611 P.2d 1036 (1980). The facts are set out in that opinion. After granting the appellant's Petition for writ of certiorari, the United States Supreme Court, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 385, vacated the judgment and remanded the case back to this Court for further consideration in light of their recent opinion in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1]

The only issue on remand from the United States Supreme Court is whether the defendant's confession should have been

---

1. *Edwards* was decided subsequent to the trial of this matter and the trial judge did not have the benefit of the United States Supreme Court's decision.

suppressed by the trial court because at the time of his confession the defendant was denied his right to counsel. Before addressing this issue it must first be established that the defendant invoked his right to counsel and that a custodial interrogation took place. It is necessary to determine whether there was a custodial interrogation because the United States Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the right to have counsel present only extends to custodial interrogations.

The record shows that the defendant requested counsel three times before confessing to the police. The first time was after the police entered his home, awoke him, brought him into the living room and asked him whether he wanted to make a statement. He said he thought that he should see a lawyer before making a statement. The second request for counsel came after the defendant was placed under arrest, handcuffed and searched. Again he was asked whether he wanted to make a statement, and again he said that he would after he had been advised by his attorney. The third request came while in custody and after a detective asked if he were ready to give a statement. He said, "I want a lawyer before I talk to you." These three requests are more than sufficient to establish that the defendant had invoked his right to counsel.

Concerning the issue of whether a custodial interrogation took place, the United States Supreme Court in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), set out the test for determining whether a suspect has been interrogated in violation of the standards set out in *Miranda, supra*. The Court in *Innis* stated, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S., at 301, 100 S.Ct., at 1689, 64 L.Ed.2d at 308.

In this case, Detective Anderson approached the defendant while he was in custody and Anderson testified the conversation went as follows:

"I told him that we were going to be talking to everybody that was remotely involved in this situation and he indicated that Mr. Muller did not know anything about it, did not have anything to do with it; something of that nature, and I then asked him if he would like to give me his side of it or what did take place and he said, 'Yes.'"

Without doubt this testimony indicates that an interrogation occurred because immediately before the confession there was express questioning by the police officer. Therefore, having determined that the defendant invoked his right to counsel and that a custodial interrogation occurred, we find the defendant was entitled to have counsel present.

Even though the defendant may waive his right to counsel and respond to interrogation, the United States Supreme Court stated in *Edwards* that,

"we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S., at 484, 101 S.Ct., at 1884.

Following *Edwards*, the United States District Court for the District of Columbia in *U.S. v. Hinckley*, 525 F.Supp. 1342 (1981), aff'd 672 F.2d 115 (D.C.Cir.1982), suppressed statements made by the defendant after determining that the defendant's right to counsel had been violated when FBI agents interrogated him despite un-

equivocal statements that he wanted to speak to a lawyer. The court stated that, "Since the 'background' information obtained at the Washington Field Office was not the product of conversation initiated by Hinckley, the mere fact that he responded to persistent and express questioning does not yield the conclusion that he waived his previously expressed right to consult an attorney." *Id.* at 1358.

■ The case before us is also similar to *Edwards* in that the defendant requested counsel but the confession was obtained without the benefit of counsel being present and only after the police officer initiated further interrogation by asking the defendant if he would like to give his side of the story. Therefore, following *Edwards*, we find that because the defendant asked for counsel three times and was not given the opportunity to deal with the police through counsel, the confession that was a result of police-initiated interrogation must be suppressed. We reverse and remand for a new trial with directions to suppress the confession obtained in violation of the defendant's right to counsel.

McFADDEN and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, Justice, concurring specially.

A recent Supreme Court case addressing the question of what constitutes "interrogation" is *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Court in *Innis* held that:

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning *or its*

*functional equivalent.* That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words *or actions* on the part of the police (other than those normally attendant to arrest and custody) that the police *should know* are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." 100 S.Ct. at 1689–90 (emphasis added) (footnotes omitted).

The dissent, and to some extent the majority, place too much emphasis on the exchange of words between detective Anderson and Monroe in determining whether Monroe "initiated," within the meaning of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the conversation with detective Anderson. An inquiry as to the "functional equivalent" is more germane.[1] As *Innis* makes clear, all of the circumstances surrounding the confession must be examined in determining whether there was an interrogation. Similarly, it is to ignore reality and encourage the violation of constitutional rights to fail to look at all the surrounding circumstances in determining the initiator of a verbal exchange which leads to a confession.[2]

---

1. Even if it were proper to focus solely on the conversation between Monroe and detective Anderson, it is clear that the state carries the burden of proving a knowing and intelligent waiver of Monroe's right—*see Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980)—and therefore the burden of proving that Monroe "initiated" the conversation with detective Anderson. It simply has not met that burden in this case, nor even approached such a meeting.

2. I find it somewhat ironic that the dissent should choose to characterize questions asked

by a defendant of a police officer at a police station as "interrogation," while at the same time expressing doubt as to whether the officers' questions of the defendant amounted to interrogation. This is particularly true when the defendant is 18 years of age, is accused of murdering his father, has been in custody, including lock-up, for approximately six hours, has made three requests for counsel, none of which were honored by the police, has seen his mother ordered to come to the police station against her wishes in an apparent attempt to

The inquiry, following a request for counsel, should be directed at the activities of the police as a whole, and not at the actions of individual officers. Monroe, in custody and in no wise a free agent, made two specific requests for an attorney, and was placed in a cell. This was proper. Then, despite these requests, Monroe's mother was picked up and taken to police headquarters for the express police purpose of persuading her to endeavor to get Monroe to talk to them.[3] After Monroe finished talking with his mother, he saw his roommate in the booking area of the police station. The trial court specifically stated that "I think the defendant on his own decided that he did not want him [Muller] involved and that he made the decision to give the statement to the law enforcement officers. I think that the law enforcement officers had gone ahead maybe at that point without again reminding him of his *Miranda* warnings and taking the other precautions they did might have taken advantage of him as far as catching him in a weak moment; the fact he saw a friend and didn't want to get the friend involved." To what extent his mother had softened his resistance is unknown. The fact remains, however, that he was exposed to both of these ploys by the police who had taken him from the privacy of his cell. He should have

remained in his cell until counsel consulted with him or until he was taken before a magistrate, both of which occurrences are required by Idaho statutory law. *See* I.C. §§ 19–615; I.C.R. 5; I.C. § 19–853.

The sequence of events that occurred after Monroe was taken from his jail cell to the interrogation room cannot be divided into minute time sequences so that a particular sequence can be isolated as standing for the proof that it was Monroe who "initiated" conversations leading to the confession. Police "interrogation" or its functional equivalent commenced when Monroe was taken from his jail cell to the interrogation room, and it did not cease until Detective Anderson had obtained Monroe's confession. To hold otherwise would not only be extremely naive, but would also improperly shift the inquiry from the defendant's reasonable perceptions to the subjective intentions of the police. *Rhode Island v. Innis, supra,* 101 S.Ct. at 1689. It would also foster tag-team interrogation tactics, allowing new officers to approach a defendant until the defendant "initiated" a conversation, at which point all prior questioning would be irrelevant. The sort of direct verbal questioning in which Detective Anderson engaged when he said "would [you] like to give me [your] side of it" could then occur with impunity.

get her to do what the police could not, and has had his roommate brought to the police station and displayed to him under circumstances suggesting that the police would charge his roommate if he did not confess. To characterize Monroe's question as to the reason for his roommate's presence as "interrogation" is ludicrous. To characterize the officer's statement that he wished to talk to Monroe and subsequent question as to whether Monroe wanted to tell him "his side of it" as anything less than interrogation is equally ludicrous.

3. Although the testimony of the police painted a somewhat different picture—that of the mother requesting that she be allowed to see her son, and the police merely fulfilling her wishes—this picture is inconsistent with the record, including the actions and words of the police officers. For example, it certainly was not necessary to *order* the mother down to the police station to inform her that her husband was dead. Taking her to the police station *is* consistent, however, with her testimony that the police attempted to get her to persuade her

son to confess. Then there is the statement by officer Prescott, in his official report, that, after Monroe's conversation with his mother "[t]he subject opened the door and reporting officer asked him if he had made up his mind." The dissent theorizes as to a manufactured hypothetical situation in which the police inquired of Monroe as to whom he wanted for his attorney, which then proceeded to the police officer being interrogated by Monroe! All of this notwithstanding a record showing that the police did not at any time make an attorney available, or even offer to make one available, or offer Monroe the use of a telephone. *Compare State v. Ross,* 92 Idaho 709, 449 P.2d 369 (1968), in which this Court, post-*Miranda,* remarked "that the law enforcement officers admirably complied with constitutional procedural standards . . . ." *Id.* at 716, 449 P.2d at 376. The file in the clerk's office shows that in that case the sheriff and the prosecuting attorney of Canyon County offered the defendant the use of the telephone which was there in front of him.

The record clearly shows that not only did the police fail to "scrupulously honor" Monroe's decision to remain silent until he had seen an attorney, *see Michigan v. Mosely*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), but they engaged in the exact sort of "psychological ploys" which *Miranda* expressly recognized as being constitutionally prohibited interrogation. "[T]his Court has recognized that coercion can be mental, as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1614, 16 L.Ed.2d 694 (1966).

In my view the police acted in violation of Monroe's constitutional rights in taking him from his cell to meet with his mother in the interrogation room, after he had twice requested the assistance of counsel, which request was scrupulously dishonored.[4] For this reason, I concur with the majority's conclusion that Monroe's confession was unconstitutionally obtained and should have been suppressed. I also agree that he did not initiate the immediate conversation leading to the confession, and clearly is entitled to a new trial. I am fully convinced, however, that suppression of the confession was also mandated by violations of statutory procedures for appointment of counsel and immediate arraignment before a magistrate.[5] In short, adherence to legislatively set protections would in most cases,

4. I note that by the time Monroe talked to Detective Anderson—approximately 9:00 a.m.—a magistrate would surely have been available to appoint counsel for Monroe, assuming he could not retain one because of lack of finances. In this regard I.C. § 19–853 provided at the time of Monroe's arrest:

"Duty to notify accused of right to counsel—Appointment of counsel—Notification in writing—Acknowledgment by accused.—(a) If a person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is not represented by an attorney under conditions in which a person having his own counsel would be entitled to be so represented, the law enforcement officers concerned, *upon commencement of detention,* or the court, upon formal charge, as the case may be, *shall*:

(1) clearly inform him of his right to counsel and of the right of a needy person to be represented by an attorney at public expense; and

(2) if the person detained or charged does not have an attorney, *notify the public defender* or trial court concerned as the case may be, that he is not so represented." (Emphasis added.)

The prosecutor's office was called as soon as the crime was reported, but no attempt was made to contact an attorney for the defendant until after he had confessed. If the police would have been as diligent in honoring Monroe's requests for an attorney as they were in finding his mother and ordering her down to the police station, perhaps this case would not have been involved in such a long and tortuous appellate process.

It is not necessary in this case to express an opinion as to whether a violation of the duty imposed by I.C. § 19–853(a)(2) might result in suppression of subsequent statements, but it is in order that law enforcement officers be made aware of it.

5. In regard to the need for an immediate arraignment before a magistrate when, as in this case, an arrest is made without a warrant, *see State v. Wyman*, 97 Idaho 486, 497, 547 P.2d 531, 542 (1976) (Bakes, J., and McQuade, C. J., dissenting) ("the defendant's prolonged detention without being brought before a magistrate was a violation of his rights under I.C.R. 5, I.C. § 19–615, and the Fourth Amendment to the Constitution of the United States."). The recent opinion of district judge James G. Towles correctly applied I.C. § 19–615 to a police claim of "reasonableness" in the delay in arraignment of a criminally accused person. Judge Towles stated:

"As to the delay in arraignment, it is the Court's opinion that there was no reasonable excuse nor was the delay itself reasonable. If the police officer had probable cause to arrest the defendant, he also had sufficient probable cause to present the facts to a Magistrate for the issuance of a warrant of arrest and to permit the Magistrate to fix bond, if appropriate. Therefore, the excuse that the officers were too busy or were gathering additional evidence and therefore could not take the defendant before the Magistrate, is not credible. If further evidence needed to be secured, the arrest should not have been accomplished.

"This lends credence to the defendant's argument that the delay was for the purpose of obtaining a statement more than for any other reason, and cannot be condoned by the Court as a clear violation of the duty of a police officer to present an accused before a neutral and detached Magistrate 'forthwith'. The day in question was a Monday and the Court was open and available." *State v. LaMere*, Crim. No. 12613 (1979).

as this, preclude the necessity of resorting to safeguards of the federal constitution. I am certain that the high school class attending oral argument at the rehearing left wondering if "one telephone call" is a myth or a reality. The Idaho legislature, however, provided something better, and laid it out in stone.

BAKES, Chief Justice, concurring in part and dissenting in part:

While I agree with the majority in its recitation of the applicable law, I believe that the suppression of the confession and the ordering of a new trial by this Court is inappropriate and premature. In my view, the question of whether the confession should be suppressed in this case hinges upon unresolved questions of fact, which more properly should be decided by the trial court.

In reviewing the "custodial interrogation" in this case, the majority has omitted some crucial facts in the encounter between the defendant and Detective Anderson. The events preceding the confession were as follows. After the defendant's arrest, his mother was brought to the police station and was encouraged by an Officer Prescott to meet with her son to see if he would talk to her. The defendant conversed with his mother, but refused to talk to her about the alleged crime until he had seen a lawyer. As Mrs. Monroe was leaving, Officer Prescott asked the defendant if he was ready to give a statement. Monroe answered that, "I want a lawyer before I talk to you." This was the third request for counsel mentioned in the majority opinion. Immediately thereafter, Detective Anderson, who had not been privy to the foregoing communications, entered the room where the defendant was and asked "if [he] could talk to him and [the defendant] indicated yes." There is nothing in the record to suggest what either Anderson intended or the defendant understood that conversation to be about, although it might be surmised that it would be about the crime. However, before anything more was said by Anderson, the defendant commenced his own interrogation

by asking Anderson several questions. Having seen his roommate, Jim Muller, enter the police station, the defendant asked Anderson what his roommate Muller was doing there. Anderson testified that he responded to the defendant as follows:

"I told him that we were going to be talking to everybody that was remotely involved in this situation and he indicated that Mr. Muller did not know anything about it, did not have anything to do with it; something of that nature, and I then asked him if he would like to give me his side of it or what did take place and he said, 'yes.' "

The record further indicates that Anderson again advised Monroe of his *Miranda* rights, and Monroe executed a written waiver of those rights prior to making his statement concerning the alleged offense. As quoted by the majority, the United States Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), stated that a defendant who invokes the right to have counsel present during custodial interrogation "is not subject to further *interrogation* by the authorities until counsel has been made available to him, unless the accused *himself initiates* further communication, exchanges or conversations with the police." 451 U.S. at 484, 101 S.Ct. at 1885. (Emphasis added.) The first question to be asked is whether Detective Anderson's request to talk *to* the defendant, under the circumstances in which it occurred, constituted an "interrogation" as defined in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). If it was not an interrogation, then according to *Edwards*, the request did not violate Monroe's right to counsel. *Innis* held that interrogation is "any words or actions on the part of the police ... that the police should know are reasonably likely to illicit an incriminating response from the suspect." 446 U.S. at 301, 100 S.Ct. at 1689. Whether the simple request by Anderson to talk to Monroe was by itself such that Anderson should have known that it was "reasonably likely to elicit an incriminating re-

sponse from the suspect," is a question of fact properly left to the trial court. For example, if Anderson had merely asked the defendant Monroe which attorney that he wanted the police to call, and Monroe had then started his interrogation of Anderson regarding Muller's presence at the jail, which ultimately led to the defendant's statements, a factfinder would be entirely justified in finding that "the accused himself [had] initiate[d] [the] further communication, exchange[s] or conversation[s] with the police," and that the defendant had "countermand[ed] his election." *Edwards v. Arizona*, 451 U.S. at 485, 101 S.Ct. at 1885 (1981).

The question of whether Monroe, by questioning Detective Anderson concerning the presence of Jim Muller at the police station, initiated the conversation which led to Anderson's inquiry of whether Monroe would like to give "his side of it," is a question of fact which more appropriately should be answered by the trial court. Consequently, I would remand the proceedings for findings by the trial court on these two questions. Only if the trial court on remand finds that either Detective Anderson's initial request was an interrogation, or that the defendant's questions to Detective Anderson did not initiate the conversation leading to the confession, should the conviction be set aside, the evidence suppressed, and a new trial granted. Otherwise, the conviction of the defendant, based upon the original jury verdict in this proceeding, should stand.