649 P.2d 1224

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gordon GARNER, Defendant-Appellant.**

**No. 13458.**

Court of Appeals of Idaho.

Aug. 17, 1982.

Petition for Review Denied
Nov. 15, 1982.

Marvin R. Stucki of Swafford & Stucki, Idaho Falls, for defendant-appellant.

David H. Leroy, Atty. Gen. and Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Gordon Garner was bound over for trial on two charges of injury to a child, allegedly occurring on March 31, and again on April 14, 1979. The jury found him guilty of the first count, but was unable to agree upon a verdict as to the second count.

Garner's appeal from the judgment of conviction raises the following principal issues: (1) Did the trial court commit reversible error in refusing to suppress oral and written statements made by Garner after his arrest? (2) Was it error for the court to refuse to grant Garner's motion for a "directed verdict" at the conclusion of the state's case? (3) Did the court err in refusing to grant Garner's motion to dismiss count two because the evidence produced by the state at the preliminary hearing was insufficient to establish probable cause? Garner also raises two additional issues by asserting he was denied a fair trial because of the prosecutor's references to a "confession," and because he was denied effective assistance of counsel. Our disposition of the principle issues makes it unnecessary to discuss these additional points.

Garner was arrested on April 26, 1979, at Rexburg, Idaho. He was transported from Rexburg to Idaho Falls where he was booked into the Bonneville County jail and incarcerated. At 2:00 p. m. Officer Hagen read Garner his *Miranda* rights. Garner stated that he wanted to talk with an attorney. Sometime between 2:00 and 4:00 p. m. Garner spoke briefly with an attorney at

the jail. At 4:00 p. m. Officer Hagen returned to ask Garner if he would take a polygraph test, and asked whether Garner had an attorney. Garner replied that he had doubts about the test and he had talked with a private attorney. Officer Hagen asked Garner if he would take the test if his attorney said it was all right. Garner said he would.

The officer phoned the attorney and asked him if he was representing Garner. The attorney replied he had not yet received a retainer fee. The officer inquired about Garner taking a polygraph test. The attorney replied: "Well, you know what I would tell him." The officer replied: "Yes, I do." Garner talked with the attorney before the phone call ended. The officer then asked Garner whether he would take the polygraph. Garner answered that the attorney told him not to take the polygraph and not to talk to anybody. The officer continued the conversation, asking Garner whether he was going to hire the attorney. Garner replied that he didn't know since the attorney wanted a retainer and he didn't have the money. There was no discussion about getting court-appointed counsel for Garner. Officer Hagen then said, "Well, at this point, if you haven't hired him as your attorney, I don't care what [the lawyer] says about the polygraph test. I want to know what you say. Do you or don't you want to take that polygraph test?" Garner said he would.

The evidence shows Garner was on probation in another case at the time of his arrest. Shortly after he arrived at the jail Garner talked to his probation officer. Officer Hagen testified that the probation officer advised Garner "to cooperate one hundred percent," and told him, "that she wasn't sure what she was going to do about parole [sic] violation itself." Also, by the time he agreed to the polygraph test, Garner had learned from Officer Hagen that Garner's girl friend had been arrested and was being held on charges related to the injuries to the same child.

After he obtained Garner's consent to take the polygraph test, Officer Hagen took Garner to an interview room where he reread him his rights and obtained Garner's signature on a waiver form. Officer Hagen then called Officer Sprague to do the polygraph exam. Although the evidence does not indicate that Garner agreed to any questioning other than the taking of the polygraph test, while waiting for Officer Sprague to arrive, Officer Hagen continued to question Garner about the child's injuries.

Officer Sprague arrived and took Garner into the polygraph room. Sprague also read the *Miranda* rights to Garner and obtained a written waiver of these rights. Before giving Garner the polygraph test Officer Sprague elicited oral and written statements concerning the injury that had occurred to the child on March 31. These are the statements Garner sought to suppress, in reference to the first charge against him.

### I. *Motion To Suppress.*

■ In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court, in reviewing the standards for obtaining a valid waiver of *Miranda* rights, said: "[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." The Court further held:

[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation ... the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by

the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

451 U.S. at 484–485, 101 S.Ct. at 1884–85. *See also State v. Monroe,* 103 Idaho 129, 645 P.2d 363 (1982), in which the Idaho Supreme Court adopted the *Edwards* rule. We are bound by these decisions.

There is no question here, but that the interrogation leading to the admissions were initiated by the police and not by Garner. The fact that Garner had been given the opportunity to confer with an attorney does not validate the subsequent interrogation. In *Miranda v. Arizona,* 384 U.S. 436, 470, 86 S.Ct. 1602, 1625–26, 16 L.Ed.2d 694 (1966) the Court said:

> Even preliminary advice given to the accused by his own attorney can be swiftly overcome by the secret interrogation process. [Citation omitted.] Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to counsel prior to questioning, but also to have counsel present during questioning if the defendant so desires.

After Garner once asserted his right to counsel, the officers should not have interrogated Garner further in the absence of counsel, unless Garner himself initiated such discussions. The discussions in which the officers requested Garner to take the polygraph test and to answer questions about how the child was injured were initiated by the police, not by Garner. These custodial interrogations came immediately after Officer Hagen was informed that Garner's counsel had advised Garner not to make any statements. This police conduct is what the Supreme Court in *Miranda,* supra, and in *Edwards,* supra, sought to prohibit. We hold that the trial court erred in refusing to suppress the oral and written statements made in the absence of counsel as a result of interrogation initiated after Garner asserted his right to counsel. Because Garner's conviction on count one was partially based on such evidence, we find it

necessary to set aside the judgment of conviction.

## II. *Motion for Acquittal.*

Following the close of the state's case at trial, Garner orally moved to dismiss both counts, contending the state had failed to sufficiently prove the elements of each offense. The motion was denied as to both counts. Garner then called witnesses, and testified himself, in his defense. The jury found him guilty as to count one, but could not agree on a verdict as to count two. Garner contends it was error for the trial court to deny his motion.

■ A defendant's motion challenging the sufficiency of the state's evidence at trial, regardless of whether it is called a "motion to dismiss" or a "motion for directed verdict," should be treated as a motion for judgment of acquittal under I.C.R. 29. *See State v. Holder,* 100 Idaho 129, 130, 594 P.2d 639, 640 (1979); *State v. Huggins,* 103 Idaho 422, 648 P.2d 1135 (Ct.App.1982).

As to count one, we have ruled above that certain evidence should have been suppressed. If the case is re-tried on that count, the evidence undoubtedly will be different from what we have in the present record. Consequently, we do not consider it useful or necessary to discuss further the district court's refusal to dismiss count one upon the evidence presented at the first trial.

■ As to count two, we hold that the order denying such a motion is not a final order, for the purpose of an appeal. The order is nonappealable, and there can be no judicial review of alleged error by the trial court in refusing to grant such a motion, unless the appeal is from a final judgment of conviction. I.A.R. 11(c); *United States v. Kaufman,* 311 F.2d 695 (2nd Cir. 1963); *Gilmore v. United States,* 264 F.2d 44 (5th Cir. 1959). Because the jury was unable to reach a verdict on count two and a mistrial was declared, this appeal—in respect to count two—is not predicated upon either a final order or a judgment of conviction.

III. *Motion to Dismiss Count Two.*

■ Prior to trial Garner moved to dismiss count two under I.C. § 19–815A, which permits a defendant to challenge in the trial court the sufficiency of the evidence produced at the preliminary hearing conducted in the magistrate division. Garner contends that the purely circumstantial evidence produced at the preliminary hearing by the state was insufficient under prevailing standards for the magistrate to find probable cause that Garner committed any injuries to the child on April 14, 1979, as alleged in count two. Such standards are set forth in *State v. O'Mealey*, 95 Idaho 202, 204, 506 P.2d 99, 101 (1973). The district court denied Garner's motion to dismiss, holding that the magistrate had not abused his discretion in binding Garner over for trial on both counts. Garner now asserts in this appeal that the district court erred in denying his motion to dismiss.

We conclude that in this case the denial of the motion to dismiss is not an appealable order. Idaho Appellate Rule 11 makes no provision for the appeal from such an order. Moreover, we have already noted that as to count two, Garner is not appealing from a judgment of conviction—because the jury failed to reach a verdict—nor is he appealing from any other final order in respect to count two. Accordingly, we will not discuss the adequacy of the evidence produced by the state at the preliminary hearing on count two.

The judgment of conviction is reversed, and the case is remanded for a new trial.

WALTERS, C. J., and BURNETT, J., concur.