736 P.2d 848
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Earl Walter WILLIAMS,
Defendant-Appellant.**

No. 16364.

Supreme Court of Idaho.

April 30, 1987.

Robert Jerry Van Idour, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

## ORDER DENYING PETITION FOR REVIEW

The Appellant having filed a PETITION FOR REVIEW on February 19, 1987 and supporting BRIEF on March 4, 1987 of the Court's Opinion released January 30, 1987; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REVIEW be, and hereby is, DENIED and the dissent on Denial of the PETITION FOR REVIEW by Justice Bistline, be, and hereby is, RELEASED.

## ON DENIAL OF PETITION FOR REVIEW

BISTLINE, Justice.

The majority of three who bear responsibility for the Court's opinion in *State v. Nield*, 106 Idaho 665, 682 P.2d 618 (1984), faithful to that earlier autocratic display of power witnessed there, today eschews the opportunity to reflect upon the disservice which was thereby wreaked upon the administration of justice.

The opinion for the Court first explained the sole reason for granting review:

We granted the Petition for Review pursuant to I.A.R. 118(b)(2) to review the sole issue of whether a district court must state of record the reasons for the sentence imposed. In all other respects, the decision of the Court of Appeals remains undisturbed.

The Court of Appeals examined this issue in view of their previous decision in *State v. Tisdale*, 103 Idaho [836] 654 P.2d 1389 (Ct.App.1982), wherein the Court of Appeals required that the sentencing court "indicate of record his reasons for the sentence then imposed." *Id.* at 838, 654 P.2d at 1390. In applying the *Tisdale* standard to the case at bar, the Court of Appeals stated that the district court's oral statements made on the record at the conclusion of the hearing and in the presence of the defendant, were sufficient to satisfy the *Tisdale* standard. *Nield, supra,* 106 Idaho at 666, 682 P.2d at 619.

Following which, it rendered its sole holding which was to establish that the Court of Appeals had improperly taken upon itself to repeat its prior directive to the district courts that a statement of reasons for a particular sentence be provided:

In reaching this decision, the Court of Appeals erroneously failed to consider *Tisdale* to have been overruled by this Court in *State v. Osborn,* 104 Idaho 809, 663 P.2d 111 [1111] (1983). In *Osborn* we stated, and again we reiterate, "that while the setting forth of reasons for the imposition of a particular sentence would be helpful and is encouraged, it is not mandatory." *Id.* at 810, 663 P.2d at 1112; *see also State v. Brewster,* 106 Idaho 145, 676 P.2d 720 (1984). Henceforth, this is the law of Idaho, and all cases holding otherwise are hereby overruled. *Id.*

Fortunately, the damage done to our system by the highest court in this state is minimized by the fact that by far a great majority of the district judges who impose sentence on convicted felony defendants will continue to formulate and set out the reasons and the reasoning which leads to a particular sentence being imposed. Fortunately, too, there has been no judicial overruling of the legislature's requirement that sentencing judges make findings in all first degree murder cases.

On revisiting the *Nield* case, it is felt that the arbitrary use of power there exhibited was even more capricious than originally noticed. To those members of the bar admitted in the last three years, and to those members of the bar who have included criminal law in their practices, I strongly recommend a perusal of the dissenting opinions of Bistline, J., and Huntley, J., beginning at 106 Idaho at 666, 682 P.2d at 619. For those who are merely interested, a synopsis of those opinions is simply that the majority of three,[1] who today deny a defendant's petition, in *Nield* granted the state's petition for review—notwithstanding that the state was the prevailing party in the Court of appeals where the district court was affirmed, and hence the state had nothing at stake.

Those who will want to make their assessment of the desirability of interfering in the interrelationship of the trial courts and the Court of Appeals will be hardpressed to find any redeeming rationale for this Court's having there added to its crowded calendar another case where the sole purpose of doing so was to provide a vehicle for letting the Court of Appeals know who is in charge. The majority of three opinion offered nothing by way of explanation, and in fact, that which was written was self-destructive, containing therein the concession that "the setting forth of reasons for the imposition of a particular sentence would be helpful and is encouraged ..."—words borrowed from *State v. Osborn*, 104 Idaho 809, 663 P.2d 1111 (1983). In that *Osborn* case, the State of Idaho was not the appellant, and accordingly, no issue was raised by it that the sentence was too moderate in view of the death sentence which had been earlier imposed but reversed by this Court in *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981). The district court stood fast on its earlier carefully drawn findings and conclusions, but declined to again impose a death sentence, and awarded Osborn a fixed life term of imprisonment. The Court's opinion

states that "the trial court failed to make specific statements regarding its reasons for imposing the [life] sentence...." This was not entirely accurate. Rather, the district court, was not in the least pleased with this Court's reversal of the death sentence, and made it extremely clear why Osborn did not for a second time receive the death penalty:

> Neither do I intend to make Mr. Osborn agonize for another two or three years incommunicado on death row while the Supreme Court would review findings of fact and conclusions which I endorsed for a death sentence, which I am satisfied would not be upheld. And, for this reason, I refuse at this time to follow the mandate of the Supreme Court and make findings in mitigation. *Osborn, supra*, 104 Idaho at 823, 663 P.2d at 1125.

It is thus seen that the trial court in *Osborn* did state on the record the reasons for the particular fixed life sentence. The sentencing judge had already held Osborn entitled to the death penalty, but simply elected to not put himself or Osborn through that procedure a second time. This Court said nothing whatever critical of the trial judge. Moreover, at a later time, the author of the second *Osborn* (1984) opinion would disavow that language which was a wholly gratuitous overruling of the *Tisdale* case [2]—undoubtedly inserted into the opinion in a generous attempt at collegiality:

> A statement of the Court's reasons for imposition of sentence is certainly a necessary predicate for meaningful appellate review. It is clear that such a review cannot proceed if the appellate court is not informed as to the factual basis for the sentence. *Nield, supra*, 106 Idaho at 666, 682 P.2d at 619 (Huntley, J., dissenting).

In the *Tisdale* case, the sentencing district judge did not give any clue whatever as to his reasons for the sentence imposed. Not so in *Nield*, however. The question raised

---

1. Under the internal rules of this Court, three votes are required to review a Court of Appeals opinion.

2. *State v. Tisdale*, 103 Idaho 836, 654 P.2d 1389 (1982).

in *Nield* was whether the sentencing court, in stating for the record his reasoning for the particular sentence, did not, in the view of the defendant, express adequate reasons for a ten-year sentence, and the Court of Appeals held that the court's reasons recorded in the reporter's transcript were sufficient.

Today, in a slightly different setting, the Court of Appeals has nicely and properly suggested that: "We deem ourselves constrained by existing authority until the Supreme Court modifies its position. *The district court was not required to state his reasons for relinquishing jurisdiction.*" *State v. Williams,* 112 Idaho 459, 732 P.2d 697 (Ct.App.1987). That court correctly sees that its review of the order appealed from, a relinquishment of 120–day retained jurisdiction, is futile without having any indication of what so motivated the district court, the Honorable John Maynard, District Judge. The opinion cites us to our recent opinion authored by Justice Donaldson in *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986), wherein is described the difficulty of appellate review where a trial court fails to provide its reasoning for a particular ruling:

> "[H]ow can we truly say that the trial court has not abused its discretion when we do not know the reasons for its ruling on the new trial motions? How can we state that the trial judge correctly applied the standard for each new trial motion when all he tells us is that he grants or denies them based on this or that rule?" [*Quick, supra,*] at 771, 727 P.2d at 1199. *Williams, supra,* 112 Idaho at 461, 732 P.2d at 699.

My vote is that this Court put aside grandiose notions of superiority and, instead, do that which provides the greater good for the greater number. I do not perceive it as being in the best interests of the system that this Court so portray itself in charge on the basis of rank only. The *Nield* opinion for the Court, and the summary disposition of the instant petition for review, simply put, do not reflect creditably upon this Court. How can it be said that a trial court's statement of reasons are helpful, and are encouraged, and in the same breath give trial courts, in criminal cases only, carte blanche authority to dispense with such statements? What I perceive as being accomplished is an unhealthy schism between Idaho's two appellate courts. I hear rumblings from the trial bar that the opinions issued by the Court of Appeals strongly suggest that the Court has acquired an esteem which this Court cannot denigrate. One way to avoid this problem is readily at hand. With 1988 being the year of the next general election, more and more genuinely concerned members of the bar may consider promoting a constitutional amendment which provides for the state of Idaho to go to a seven-member Supreme Court. When such a constitutional amendment is in place, it would be a simple matter to legislate out the Court of Appeals, and, in order to assimilate all three of those judges into this Court by appointment, it would be my honor, if necessary, to tender my resignation so that all three can be accommodated.

## II.

There is more to this *Williams* case than just the presentation of an opportunity for this Supreme Court to reflect upon the ill it accomplishes by jealously insisting upon its right to be the court which first says that trial courts will in all cases, criminal as well as civil, furnish a statement of reasons. What I speak of is the *Williams* case itself. As the Court of Appeals opinion points out, *as a result of negotiations,* Williams pleaded guilty when the prosecutor agreed to and did recommend a retained 120–day jurisdiction. The court accepted the pleas and followed the prosecutor's recommendation.

The trial court made this statement at sentencing:

> It's the further order of the Court that the Court retain its jurisdiction for a period of 120 days. That means that a report will be made back before the end of that time and if it's a favorable report the Court will have the jurisdiction to change the sentence.

Whether or not that happens depends primarily upon the reports and your conduct in the future. Tr., pp. 58–59.

As stated in defense counsel's brief:

Those comments clearly contemplated probation after a successful completion of the 120 day evaluation period. Defense counsel's comments echo this spirit of the agreement, to wit "... I think that's why we came up with the recommendations to the Court for 120 day retained jurisdiction because it offers him the opportunity to ultimately be placed on probation *if he passes the evaluation process at Cottonwood.*" (Emphasis ours, Tr., p. 54). This plea agreement undeniably looked to probation after a successful completion of the 120 evaluation. The spirit of that intention has been violated. Mr. Williams held up his end of the plea bargain, only to find it meaningless. Appellant's Brief, pp. 11–12.

Contra is the state's rather unpersuasive argument for upholding the trial court's unexplained retromingency:

The state submits that, based upon the very guarded comments of the staff of the NICI, their qualified recommendation of probation, and the fact an in-depth history of Williams was not provided pursuant to Williams' request, the court properly exercised its discretion in ordering that jurisdiction be waived. Respondent's Brief, p. 12.

Yet, at the same time, the state's brief concedes "that all charges in California against Williams were being dropped and that Ohio would not prosecute." The second of the concessions is impressive in that the same brief points out that Williams had explained to the Cottonwood jurisdictional review committee that Williams had never been in Ohio, and an Ohio warrant was not for him, but for a relative. The record which I reviewed—and which is equally available to the other members of the Court, shows no prior felonies against Mr. Williams at the time he was sentenced with an award of 120 days retained jurisdiction.

One bright light, the record shows that at Cottonwood Williams was accorded the type of a hearing which this Court required in *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978).

A dim light indeed, however, is that the trial court not only did not bother with giving any reasons for going counter to the Cottonwood recommendation and to the court's own intimation of a better day if Williams was able to successfully do the Cottonwood stint, but afforded no judicial hearing to Williams. In this respect, the situation was much like that in *State v. White,* 107 Idaho 941, 694 P.2d 890 (1985).

In the *White* case, Justice Huntley authored an opinion where four members of the court determined that a sentenced defendant was not entitled to a judicial hearing before a trial court relinquished jurisdiction. However, there is a significant difference between White's case and Williams' case. White did not receive Cottonwood recommendation for consideration of probation. Up until this very time this Supreme Court has not had the opportunity of declaring itself on the question of whether a sentenced defendant should be accorded a hearing in the district court as a condition precedent tò entering an order relinquishing jurisdiction which goes *against* the Cottonwood recommendation.[3] Moreover, this Court has not itself passed on the validity of a trial court's relinquishment of jurisdiction which is done by summary order which states not the slightest reason for rejecting the Cottonwood recommendation.

In my own concurrence with the majority opinion in *Wolfe,* I made it clear that while I was so doing, my leanings were entirely with the teachings of Justice Bakes in his *Wolfe* dissent—which was a well-written and well-reasoned critique of *State v. Ditmars,* 98 Idaho 472, 567 P.2d 17 (1977), and included a worthwhile quotation from *United States v. Behrens,* 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963). That quotation is highly applicable here where there was no second confrontation between defendant

---

3. At the very *least* a district court so predisposed should so notify defendant and his counsel and conduct something in the nature of an order to show cause hearing.

Earl Williams and District Judge John Maynard.[4] That quotation suggests that the court may forget what defendant earlier said. An unmentioned corollary is that *the court might also forget what the court said* at the earlier hearing. Here, to the average person, Judge Maynard's words would have carried with it connotations of an implicit promise of an award for proven conduct. "Moreover, only at the final sentencing can the defendant respond to a definitive decision of the judge."

Much of what Justice Bakes wrote in his *Wolfe* opinion was incorporated in my *White* opinion, 107 Idaho at 943 *et seq.*, 694 P.2d at 894 *et seq.* One passage in particular is directly applicable here:

> As the majority opinion indicates, judges often place "a great deal of trust in the report and the recommendations contained therein." *Ante* [99 Idaho 382, 582 P.2d] at 733. Since they will be receiving only the board's side of the evaluation of the defendant without allowing the defendant an opportunity to respond, the courts will tend simply to rubberstamp whatever the report recommends. Consequently, responsibility for making the decision will become increasingly blurred between the court, which has the lawful duty to make the decision, and the Board of Corrections, which as a practical matter will often make the decision. *When the judge places a defendant in the custody of the Board of Corrections and retains jurisdiction for 120 days it is apparent that the judge believes that the defendant's conduct during those 120 days may well indicate that he is a good candidate for probation. The decision following the period of retained jurisdiction whether to grant the defendant's request for probation is of the utmost importance to the defendant.* In my view the de-

fendant, under our criminal justice system, has a right to have that decision made by the court, not the staff at the NICI. The duty to fix a defendant's sentence and to hold hearings in that regard belongs to the courts, and that duty should remain in the courts. The duty for evaluating and disciplining prisoners belongs to the Board of Corrections, and it should be allowed to perform that duty without the burden of performing the courts' hearing functions as well. *Wolfe, supra,* 99 Idaho at 392–94, 582 P.2d at 738–40 (Bakes, J., dissenting.)

This *White* case, too, is brought to our attention by counsel representing Mr. Williams. What surfaces here is that this Court, overly intent in not relaxing its stranglehold placed on the Court of Appeals, is not at all interested in the injustice perpetrated upon Earl Williams and the damage done to procedural due process and so well outlined by Justice Bakes in his *Wolfe* opinion. In the *White* case, after attempting to bring the minds of the other members of the Court to focus on the wisdom of *Wolfe* and the words of Justice Bakes, I concluded that fruitless effort thusly:

> Following which I expressed my approval of that which Justice Bakes had written: "In time, however, I cannot help but think the full court will come around to the position espoused by Justice Bakes." With the appropriate time having arrived, and where the opportunity is now for the court to swing to the views of Justice Bakes, defense counsel in this case, and defense counsel elsewhere, may well ask where is Justice Bakes today? *White, supra,* 107 Idaho at 945, 694 P.2d at 894.

> *when the time comes for final sentence the district judge will remember the defendant's words in his absence* and give them due weight. Moreover, only at the final sentencing can the defendant respond to a definitive decision of the judge." 375 U.S. at 167–68, 84 S.Ct. at 298. *Wolfe, supra,* 99 Idaho at 392, 532 P.2d at 738 (emphasis added).

---

4. "The elementary right of a defendant to be present at the imposition of sentence and to speak in his own behalf, which is embodied in Rule 32(a) of the Federal Rules of Criminal Procedure, is not satisfied by allowing him to be present and speak at a prior stage of the proceedings which results in the deferment of the actual sentence. Even if he has spoken earlier, *a defendant has no assurance that*

To that quaere, I add another. Where is Justice Huntley? In *Nield,* on reflection of the *Osborn* opinion, which he authored, he had the courage to shortly thereafter reflect and disavow the very language to which the other three members of the *Osborn* majority continue to cling. Clearly, there have always been two votes for that which Justice Bakes wrote in *Wolfe,* and Justice Huntley in my view would be a compatible and respectable third.

A final word in my *White* opinion, found in a concluding footnote, observed that the majority holding "does not preclude trial judges in the interest of common sense and decency from affording such a right. Those district judges who read the foregoing passages authored by Justice Bakes may well feel compelled to do so—in which regard they will not be in error." *Id.* at 946, 694 P.2d at 895. Obviously, District Judge Maynard was not impressed with what Justice Bakes taught, nor with my humble endorsement thereof.

In my view, the record requires that we reverse or otherwise set aside the order relinquishing jurisdiction, and remand with directions that an order be entered granting the defendant Williams the probation which he has good reason to believe he was promised if he earned a do-pass recommendation from Cottonwood.