824 P.2d 135

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Paul Allen ALBERTS, Defendant-Appellant,**

**No. 18879.**

Court of Appeals of Idaho.

Nov. 1, 1991.

Petition for Review Denied Feb. 14, 1992.

Norman L. Gissel, Coeur d'Alene, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., James E. Leuenberger, Deputy Atty. Gen., for plaintiff-respondent.

WALTERS, Chief Judge.

The appellant, Paul Alberts, pled guilty to two counts of sexual abuse of a child under the age of sixteen years. I.C. § 18-1506. He received unified sentences of fifteen years, with five years' minimum confinement, on each count. The district court also ordered that the sentences be served consecutively. After a period of retained jurisdiction, the court relinquished its jurisdiction and later denied a motion by Alberts under I.C.R. 35 to reduce his sen-

tences. On appeal, Alberts contends that the district court abused its sentencing discretion by imposing an "excessive" sentence and by relinquishing jurisdiction instead of releasing Alberts on probation. He does not raise any issue with regard to the Rule 35 proceeding. We conclude that the district court did not abuse its discretion by deciding to relinquish jurisdiction upon determining that incarceration was the better alternative than probation. However, we hold that the court's decision to require consecutive service of the sentences was an abuse of the court's discretion in light of the circumstances of the crimes and the character and background of the defendant. We direct that the district court enter a modified judgment of conviction specifying that the fifteen-year, unified sentences be served concurrently.

Alberts, a self-employed insurance agent, had a college education and had been honorably discharged from military service. He was forty-two years of age when he was arrested in 1989 on two charges of sexual abuse of a child under the age of sixteen. The charged incidents had occurred during the same month but on different dates and involved two of Alberts' nephews. On the first charge, the state alleged that Alberts had masturbated a five-year old boy and had caused the boy to fondle Alberts' penis. On the other charge, the state alleged that Alberts had performed fellatio on a thirteen-year old boy. After his arrest, Alberts revealed that he had engaged in similar acts with other young children—primarily boys—over the previous twenty years.

Following his pleas of guilty to the charged allegations, Alberts undertook private counselling and received a psychological evaluation as part of the presentence investigation report prepared for his case. That evaluation discloses:

> Mr. Alberts' personality profile is somewhat unusual in that he is basically a homosexual pedophile and that there seems to be an absence of psychopathic deviance characteristics. In the research data from the [Multiphasic Sex Inventory], all of the sexual offender profiles include psychopathic deviancy, usually as the primary factor. Psychopathic deviancy tends to be difficult to treat. Since this factor is not present here, this would tend to improve our prognosis for successful treatment for this client. Paul's pathology tends to be more "neurotic" as opposed to antisocial, dramatically improving our chances with treatment.
>
> This client seems to be very open about his deviancy, and also exhibits a great deal of remorse about the possible harm he has brought to a number of children. He presents as an ideal candidate for treatment.

As noted, the district court imposed a sentence of fifteen years, with minimum periods of confinement of five years, on each of the charges, and the court also ordered that the sentences be served consecutively. Additional information provided to the court during the sentencing hearing indicated that probation—with a structured program for long-term treatment—could be afforded to Alberts as an alternative to incarceration. As a result, the court decided to retain jurisdiction for 180 days under I.C. § 19-2601. In the meantime, Alberts was committed to the custody of the Board of Correction.

At the expiration of the period of retained jurisdiction, the court received a report from the jurisdictional review committee of the Department of Corrections. A majority of the three members of the committee recommended that the court release Alberts from custody under conditions suggested in a detailed probation program. The committee's recommendation was supported by reports from ten correctional officers who had supervised, instructed or dealt with Alberts during the time he had been in custody. Those reports essentially related that Alberts' attitude and performance in the institution had been either "good" or "outstanding."

A report by the staff psychologist contained the following observation:

> Mr. Alberts' history as well as the diagnosis of pedophilia make him a high risk to re-offend, however, the developing insight, victim empathy and desire for as well as willingness to participate in a treatment program help lower this risk level somewhat. If Mr. Alberts can de-

velop a structured living situation that limits or eliminates his contact with children coupled with an intensive group and individual treatment program, the potential for successful integration back into society is possible. Mr. Alberts is starting to accept the reality that he can never be alone with children again and that he will always have to be more aware of his thinking patterns and behavioral patterns than the average person. Mr. Alberts comes out a moderate-to-high risk to re-offend on the "Levels of Risk for Sexual Offending," however, with the proper structure and supervision, this can be lowered to a moderate risk.

Upon receipt of the recommendation from the jurisdictional review committee, the district court entered an order relinquishing jurisdiction. The court's order recited that it had considered the committee's report and had reviewed the presentence investigation information. The court entered findings that Alberts had engaged in a long-term course of sexual deviancy; is characterized as a pedophile with little or slight chance of changing his primary sexual orientation to children; has a significant substance abuse problem [1]; and is a moderate to high risk to re-offend. Based on these findings, the court concluded that Alberts' release could best be implemented by the Parole Commission. Accordingly, the court relinquished its retained jurisdiction.

We turn first to Alberts' contention that the district court abused its discretion by relinquishing jurisdiction. His argument recognizes, correctly, that the decision to place a defendant on probation or whether, instead, to release jurisdiction over the defendant is a matter within the sound discretion of the trial court. *State v. Hood,* 102 Idaho 711, 639 P.2d 9 (1981); *State v. Lee,* 117 Idaho 203, 786 P.2d 594 (Ct.App.1990), *citing State v. Williams,* 112 Idaho 459, 732 P.2d 697 (Ct.App.1987) *review denied,* 112 Idaho 796, 736 P.2d 848 (1987). From our review of the record, we are not persuaded that the court's choice to deny probation constituted an abuse of discretion when the court relinquished jurisdiction in favor of a term of imprisonment.

However, we take a different view of the court's decision to order the sentences to be served consecutively. At the sentencing hearing, the court explained:

> The effect of that sentence is that you are sentenced to serve 30 years in the Idaho State Penitentiary with it required, before you're eligible for any parole, that you serve a period of ten years. Your question of parole will be up [to] the Parole Commission to determine, once you've completed those basic terms, as to whether you serve 30 years, 10 years or 20 years or some portion in excess of ten years. It will be up to the Parole Commission.

The court's explanation is consistent with operation of the Unified Sentencing Act, I.C. § 19-2513. This statute provides in part:

> During a minimum period of confinement, the offender shall not be eligible for parole or discharge or credit or reduction of sentence for good conduct except for meritorious service. The offender may be considered for parole or discharge at any time during the indeterminate period of the sentence.

As the court structured Alberts' sentences, Alberts would have to serve the minimum period of confinement of five years on the first conviction before he

1. The court did not specify the nature of Alberts' substance abuse problem. The presentence report shows that Alberts' criminal record consists only of five traffic-related offenses, including two charges of driving while under the influence, once in 1968 and again in 1970. In addition, he had disclosed to the presentence investigator that he had used LSD and PCP one time at the age of nineteen or twenty; that he once had tried cocaine; had tried "speed" several times in college to "cram;" and that he occasionally had smoked marijuana until about three years before the disclosure to the presentence investigator. The report from the Jurisdictional Review committee of the Department of Corrections related that the alcohol/drug screening tests administered upon Alberts' entry into the corrections system indicated that he "has a definite substance abuse problem and needs treatment." The report also showed that, subsequent to his admission into the institution, Alberts maintained regular attendance in the Narcotics Anonymous group, as well as in the male sex-offenders' group.

could be discharged from that sentence and begin serving the sentence on the second conviction.[2] He would then have to serve another five years, on the second conviction, before he could be paroled during the indeterminate portion of this sentence. As a result, Alberts would serve—at a minimum—ten years before he could be paroled. Of course, if the Parole Commission decided not to discharge or parole Alberts at any time, but instead required him to serve his sentences in full, Alberts would be incarcerated for thirty years.[3]

Our Supreme Court has noted that—among the best-settled rules of appellate review—sentencing is a matter left in the studied discretion of the trial judge and that the decision to set sentences to run concurrently or consecutively is also within the discretion of the trial court. *State v. Dunnagan,* 101 Idaho 125, 126, 609 P.2d 657, 658 (1980). Indeed, the trial courts are empowered by statute to exercise discretion in ordering consecutive service of multiple sentences. I.C. § 18-308; *State v. Lawrence,* 98 Idaho 399, 565 P.2d 989 (1977). Nonetheless, the Supreme Court on occasion has found compelling circumstances which justified the modification of sentences that the trial courts had ordered to be served consecutively and, accordingly, has ordered the sentences to be served concurrently. *See Dunnagan, supra; State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976); *State v. Monroe,* 97 Idaho 457, 546 P.2d 854 (1976); and *State v. Ross,* 92 Idaho 709, 449 P.2d 369 (1968). Notably, the sentences in each of these cited cases were imposed under the indeterminate sentencing statute then in existence and not under the current Unified Sentencing Act, I.C. § 19-2513, applicable to Alberts' crimes. In the context of the possible time to be served under the aggregation resulting from consecutive sentences, however, that distinction makes little difference. We recently have held that, under the Unified Sentencing Act, the minimum period of confinement generally will be treated as the probable measure of the defendant's incarceration; however, by focusing on this period we do not wholly disregard the aggregate length of the sentence. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). *See also State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991). That observation is equally applicable to a review of sentences ordered to be served consecutively.

In the *Dunnagan* case, two defendants, who were 20 and 21 years of age respectively, and who had "very low IQ's", each received eleven sentences for a series of grand larceny and burglary convictions. Their sentences essentially amounted to an initial period of fourteen years followed by another, consecutive sentence of fourteen years, for a total of twenty-eight years. Although the Supreme Court recognized the discretionary authority of the trial court to impose sentences within the maximum limits set by statute, and also to require that the sentences be served consecutively, the Court ordered a modification of the sentences. The Court said:

> One of the objects of our system of criminal justice is rehabilitation. Either or both of these unfortunate young men should be able to benefit, if at all, from what rehabilitative programs are available, within a fourteen year period. Under these circumstances, to impose a sentence which was more than double [sic] the length of their current natural lives was excessive and unduly harsh. Accordingly, it is the court's decision that the two fourteen-year sentences should run concurrently, and we remand with instructions to the district court to amend its order of commitment so as to cause the sentences to so run.

101 Idaho at 126, 609 P.2d at 658.

In *Drapeau,* the Court modified a sentence for attempt to commit infamous

2. A "discharge" reducing the balance of the indeterminate portion of Alberts' sentence must comply with the commutation procedure set forth in Art. IV, § 7, of the Idaho Constitution, in order to be valid. *Bates v. Murphy,* 118 Idaho 239, 796 P.2d 116 (1990).

3. The Parole Commission's eventual determination of whether, or when, to release Alberts on parole is an administrative decision exempt from judicial review under Idaho's Administrative Procedure Act. *Carman v. State, Commission of Pardons and Parole,* 119 Idaho 642, 809 P.2d 503 (1991).

crime against nature by ordering that it be served concurrently—rather than consecutively as specified by the trial court—with a sentence for assault with intent to commit infamous crime, because the two crimes "arose out of the same act." 97 Idaho at 693, 551 P.2d at 980. In *Monroe*, the defendant had pled guilty to three counts of forgery. After accepting the guilty plea, the district court sentenced Monroe to fourteen years upon each count and ordered that the terms be served consecutively rather than concurrently. The Supreme Court affirmed the judgment of conviction but ordered modification of the sentence. The Court said:

> We believe that under the circumstances of this case in which the forged checks were all obtained as part of a common plan or scheme and cashed as part of that common plan or scheme and in which the aggregate amount of the forged checks was only $50.00, the imposition of three consecutive fourteen year sentences was unduly harsh and an abuse of discretion. The judgment of conviction is affirmed, but the sentence imposed is ordered modified to provide that the three fourteen year sentences run concurrently.

97 Idaho at 457, 546 P.2d at 854. Finally, in *Ross*, the Court modified the sentences imposed for lewd conduct with a minor. Ross had been found guilty by a jury on three charges of sexually molesting two girls, ages five and six. The district court imposed sentences of ten years on each count and ordered that the sentences be served consecutively. The Supreme Court modified the sentences, on appeal, explaining:

> The court, by its judgment of conviction, sentenced appellant to an indeterminate sentence not to exceed 10 years on each of the three counts. I.C. § 18–308 ... would require these sentences to run consecutively; and the judgment does not provide that they run concurrently. Under all of the circumstances of this case it is the consensus of this court that a total indeterminate sentence of 30 years of penal servitude is unduly harsh and that the sentences on each of the three counts should run concurrently.
>
> The judgment of conviction is affirmed, but the sentence structure thereof is ordered modified to provide that the sentences of 10 years penal servitude on each of the three counts run concurrently.

92 Idaho at 718, 449 P.2d at 378 (citation omitted).

■ When determining the appropriate length of the sentences to be given Alberts in the present case, the district court properly considered the four objectives of sentencing: the protection of society from the type of conduct engaged in by Alberts; the deterrence of Alberts and others in similar circumstances; the possibility of Alberts' rehabilitation; and the element of punishment or retribution for wrong-doing. *See State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1983). The court's comments at the sentencing hearing discloses that the court was seriously concerned with the possibility of rehabilitation through a structured probation program; however, the court declined to order probation at that time and instead decided to retain jurisdiction for the purpose of reconsidering probation later after receiving additional information from the Department of Corrections.

■ The fifteen-year, unified sentences imposed by the court were within the statutory limit applicable to sexual abuse of a child. I.C. § 18–1506(1)(c). However, the court only inferentially indicated that the sentencing objectives were considered in its determination to require consecutive service of the sentences. We recognize that the trial courts are not required to give any reasons for the imposition of a particular sentence. *State v. Nield*, 106 Idaho 665, 682 P.2d 618 (1984); *State v. Osborn*, 104 Idaho 809, 663 P.2d 1111 (1983). Thus, to determine on appeal whether a sentence is reasonable, as we must do in the present case, we must turn to the record before the district court to see if there is any sound basis for requiring consecutive, rather than concurrent, service of the sentences. The

only indication in the record, supporting the court's exercise of a reasoned approach to the requirement of consecutive sentences, is the court's explanation that it intended Alberts to serve a minimum period of ten years by the aggregation of the two fixed periods of five years, before Alberts could be considered for parole. Of course, this same minimum period of ten years could have been required by the court, instead of five years, as the minimum confinement under the first unified sentence imposed.

But the greater question is whether the aggregate combination of the total of the two sentences—thirty years—is reasonable under the circumstances. We hold that it is not. Consistent with the Supreme Court's observation in *Ross, supra,* it is the consensus of this Court that a total aggregate term of thirty years is unduly harsh under the circumstances of this case. In light of Alberts' expression of remorse for his conduct, his recognition of his problem, his willingness to accept treatment and other positive attributes of his character, we conclude that some leniency in his sentences is justified. As in *Dunnagan, supra,* Alberts should be able to benefit, if at all, from what ever rehabilitative programs are available through the Board of Correction, within a fifteen year period, given the favorable reports for treatment and control of his sexual deviancy found in the presentence investigation report and the evaluation and performance indicators in the Department of Corrections' information provided to the district court as part of the Department's recommendation to release Alberts on probation.

Accordingly, the judgment of conviction is affirmed, but the sentence structure is ordered modified to provide that the two, unified sentences of fifteen years (each with five-years minimum period of confinement) shall be served concurrently.

SWANSTROM, J., concurring.

SILAK, Judge, dissenting:

For the reasons stated below, I believe the sentence imposed by the district court should have been affirmed, and therefore respectfully dissent.

When, as in this case, the sentencing judge has determined a fixed period of confinement under the Unified Sentencing Act, the fixed portion of the sentence imposed is the term of confinement for the purpose of appellate review. *State v. Kysar,* 116 Idaho 992, 783 P.2d 859 (1989); *see also State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991). Therefore, the term of confinement which we review under the circumstances of this case is ten years. Perhaps, because of the statutory requirements of I.C. 20–223,[4] our case law should change so that in sexual offense cases we recognize a diminished likelihood that the defendant will serve only the fixed portion of his sentence. *See State v. Smith,* 117 Idaho 657, 791 P.2d 38 (Ct.App.1990). However, that change must come from our Supreme Court, and without violating the separation of powers between the judiciary—which performs the sentencing function—and the executive branch's Commission of Pardons and Parole—which determines how much of the maximum sentence an inmate will actually serve. Until and unless the Supreme Court effects such a change, on appeal we must consider the fixed portion of the sentence imposed as the period of confinement. I do not believe that a total of ten years for these offenses is excessive or amounts to an abuse of discretion.

In examining Alberts' character and the nature of his offenses, the majority cites from reports submitted to the district court

4. I.C. § 20–223(b) provides in pertinent part: (b) No person serving a sentence for rape, incest, committing a lewd act upon a child, crime against nature, or with an intent or an assault with intent to commit any of the said crimes or whose history and conduct indicate to the commission that he is a sexually dangerous person, shall be released on parole except upon the examination and evaluation of one or more psychiatrists or psychologists to be selected by the commission and such evaluation shall be duly considered by the commission in making its parole determination.

by Alberts' counselors and therapists. Characterizing these reports as "favorable" toward the treatment and control of Alberts' sexual deviancy, the majority notes Alberts' expression of remorse for his conduct, his recognition of his problem, his willingness to accept treatment and other positive attributes of his character. The majority focuses on language in the reports which indicates that because Alberts seems to lack certain psychopathic deviant characteristics commonly found among homosexual pedophiles, and because he has behaved respectfully while in custody and at the same time presented himself as being honest and remorseful about his deviancy, "he presents as an ideal candidate for treatment."

I do not believe these reports draw favorable conclusions regarding Alberts' prospects for rehabilitation and his potential to reoffend. When these reports are taken as a whole they support the district court's greater attribution of weight to the primary sentencing objective of protecting society. The most optimistic depiction of Alberts' character is that Alberts, through consistent treatment and a personal dedication to permanent self-control and denial, could become a moderate rather than a high risk to the children of the community in which he lives. He can never be left alone with children. He will always have to exercise self-restraint to structure his environment and his own thought processes in order to suppress his fixated sexual orientation toward young males. The reported conclusion that Alberts presents as an ideal candidate for treatment must be read in the context it was intended; Alberts is an ideal candidate for treatment among the population of pedophiles. The reporting experts recommended to the district court that Alberts remain under the supervision of the criminal justice system for the entire length of his then thirty-year sentence.

The following excerpts from the sentencing hearing demonstrate the district court's reasoned judgment:

> [T]here are four basic objectives of sentencing that I am charged by law to meet. Those four objectives are:
>
> First, is to protect society from this type of criminal conduct.
>
> Second, is to consider what will deter you and others like you in a similar circumstance from this type of criminal conduct.
>
> Third, is to consider the possibility of your rehabilitation.
>
> And fourth, is to consider punishment or retribution for wrongdoing.
>
> I have those objectives in mind. I've read the presentence report several times. I've read the psychological report that's been added. I've read the letters that have been submitted on your behalf by your friends and co-workers. I listened carefully to the witnesses who testified in this matter and heard your comments and comments of counsel.
>
> [The district judge then reviewed the positive aspects of Alberts' character and the evidence presented in his favor, after which he stated:]
>
> All those don't change the fact, however, that among one of the greatest responsibilities we have as a civilized country, ... is the responsibility that the adults bear towards the children of our society. The fact parents or adults, generally, are expected to foster, nurture, encourage and protect young children as opposed to abuse them.
>
> ....
>
> The chain or the pattern that is set forth by the abuse of a child at a young age and how it continues on and how you break that chain. (Sic) And certainly the role that comes from these individuals is probably incalculable.
>
> ....
>
> But clearly one of the things I have to be concerned with is whether you're going to reoffend.
>
> I'm not prepared to say that there isn't some chance for you being rehabilitated. Perhaps in some way paying back to society or in fact to the specific individuals who you have harmed, in some measure the problems you've caused them. But, I'm not sure of that. And one of the things I've seen from sitting in this

position for over the last three years in dealing with a number of these cases, a number of the reports we get from the Cottonwood program and from other experts when they testify, is that one of the important factors or heavily weighted factors in determining whether a person is at risk or the degree of risk for reoffense, is the length of time and the number of involvements of this type of conduct.

Certainly this presentence report and the testimony that is revealed here through your own admissions, is that this has gone on over a matter of decades, that it's a matter that may have its foundation in your own youth, and that there are numerous young children who were abused by you during the course of this period of time.

....

I'm concerned about protecting those children as I hope you are at this point in time. We can't put our children at risk. Because if we put those children at risk and you abuse another child, there's a possibility that in 20 years that child may be standing in the same position you are now for the same type of offenses and it will be a never ending cycle of sexual abuse. The ones that have been hurt prior to this time, I can't stop that, I can't repair those damages. If I could I would. But I can take and try and prevent any future harm or hurt to other children.

Alberts' remorse, cooperation, honesty, productivity, and desire to change are encouraging, and it is hoped that those character traits will prevail upon his release from custody so that he will be able to live a happy, fulfilling life while at the same time suppressing the desire to act out the impulses of his sexual orientation. The positive attributes of Alberts' character were expressly and reasonably considered by the sentencing judge; however, the judge also expressly and reasonably considered the fact that Alberts' sociopathic character trait, pedophilia, is essentially permanent, and although it is within his power not to reoffend, Alberts will only be able to do so through extensive external and internal controls throughout the remainder of his life. When Alberts is released from prison, he will pose at least a moderate, perhaps a high, risk to children. It was within the district court's sound discretion to weigh that risk and the devastating harm that would result, even if in the life of only one child and his family, and perhaps many others, should Alberts fail to control his sexual deviancies upon release from the controlled environment of prison life. While reasonable minds might differ, I cannot say that the district judge's decision to completely remove that risk from society for ten years was unreasonable, in light of Alberts' character and the nature of his offenses.