**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38857**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 719 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 14, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TONY RAY BROWN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County. Hon. Juneal C. Kerrick, District Judge.

Judgment of conviction and unified sentence of fifteen years, with four years determinate, for aggravated battery with a deadly weapon, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent.

———————————————

GUTIERREZ, Judge

Tony Ray Brown appeals from his judgment of conviction and sentence for aggravated battery with a deadly weapon following the entry of his guilty plea. Specifically, Brown asserts the district court violated his state and federal constitutional rights against self-incrimination by questioning Brown at sentencing and that the district court further erred by failing to sufficiently consider mitigating factors, resulting in an excessive sentence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

This appeal arises from a criminal case wherein Brown entered a guilty plea to aggravated battery with a deadly weapon. After the State filed the criminal complaint, Brown waived his preliminary hearing and was bound over to district court. The State filed an information and, at the time set for arraignment on the felony charge, Brown indicated he wished

1

to enter a guilty plea without the benefit of a plea agreement. The factual basis of the charge given during the plea colloquy, and contained within the information in substantially the same form, was as follows:

> [T]hat . . . Tony Ray Brown[] on or about December 23, 2010, Gem County, Idaho, did actually, intentionally, and unlawfully use force and violence on the person of [the victim] by means of a deadly weapon, to wit: a baseball bat, by striking [the victim] in the face and the hands with the bat, and/or causing great bodily harm and disfigurement in violation of Idaho Code Sections 18-903, 907, aggravated battery, a felony.

Brown thereafter pled guilty. The district court informed Brown of his rights and questioned him regarding his understanding of the rights that are waived by the entry of a guilty plea. The district court then asked Brown to explain what acts Brown had committed that made him guilty of aggravated battery. Brown told the court that he hit the victim with a baseball bat, though Brown stated a different individual had made a threat to his girlfriend's child and the beating "wasn't meant for [the victim]." After clarifying the act was intentional, even if it was meant for a different intended victim, and being satisfied that the defendant knowingly and voluntarily entered the plea, the district court accepted Brown's guilty plea to aggravated battery with a deadly weapon, Idaho Code §§ 18-903, 18-907.

At the sentencing hearing later held, the district court heard the impact statements of the victim and the victim's mother, took argument from defense counsel and the State, and then asked Brown if he wanted to make a statement. Brown said, "No." The district court urged him to speak. Brown apologized for his actions but continued to oppose further questioning or making additional statements. The district court repeatedly asked Brown questions in regards to his assertions that he acted because the intended victim had threatened his girlfriend's child. In considering the extensive injuries the innocent victim suffered and in deciding that probation or retained jurisdiction would depreciate the seriousness of the crime, the district court imposed the maximum sentence of a unified term of fifteen years, with four years determinate. Brown timely appealed. He also filed an Idaho Criminal Rule 35 motion for a reduction of his sentence, which the district court denied.

On appeal, Brown does not challenge the denial of the Rule 35 motion, but asks this Court to vacate his sentence and remand the case for resentencing before a different judge. Brown asserts two errors: (1) the district court violated his state and federal constitutional rights against self-incrimination by compelling Brown to answer questions at sentencing; and (2) the

2

district court abused its discretion and imposed an excessive sentence because it failed to sufficiently consider mitigating factors.

## II.

## DISCUSSION

### A.    Violation of the Right Against Self-Incrimination at Sentencing

The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself."  A defendant retains the Fifth Amendment right against self-incrimination during the penalty phase of criminal proceedings. *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981).  The State counterpart, guaranteed by Article 1, Section 13 of the Idaho Constitution and codified in Idaho Code § 19-3003, also encompasses sentencing. *See State v. Wilkins*, 125 Idaho 215, 217-18, 868 P.2d 1231, 1233-34 (1994); *State v. Anderson*, 130 Idaho 765, 770, 947 P.2d 1013, 1018 (Ct. App. 1997).  A guilty plea waives a defendant's right against self-incrimination at sentencing only to the extent that testimony relates to a matter into which the trial court could have inquired at the time of the guilty plea. *Wilkins*, 125 Idaho at 218, 868 P.2d at 1234.  A defendant may not be required to testify to matters beyond the facts of the case and beyond whether the guilty plea was knowingly and voluntarily given. *Id.*  Any effort by the State to compel the defendant to so testify, against his will, violates the defendant's right to remain silent. *Estelle*, 451 U.S. at 463; *see also Anderson*, 130 Idaho at 770 n.2, 947 P.2d at 1018 n.2.[1]

Brown argues the district court violated his right against self-incrimination by requiring Brown to answer questions at sentencing about his motive in committing the crime after Brown repeatedly expressed his desire not to speak.  Brown asserts the motive was not relevant to establish a factual basis of the crime or voluntariness of the plea and, therefore, the questioning by the district court was outside the permissible scope of inquiry.  The State argues Brown did not object below or raise the issue before the trial court and, thus, any such argument on appeal is subject to the fundamental error analysis, which Brown cannot show from the record.  Brown

---

[1]    Because Brown does not argue that Article I, Section 13 of the Idaho Constitution should apply any differently than the Fifth Amendment to the United States Constitution, we refer primarily to the Fifth Amendment. *See State v. Curless*, 137 Idaho 138, 142, 44 P.3d 1193, 1197 (Ct. App. 2002).

responds that the invocation of the right not to speak at sentencing serves as the objection and, therefore, the issue is preserved for appellate review.

### 1.     Preservation of the issue on appeal

Generally, this Court will not consider an alleged error absent a timely objection made before the trial court. *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003). An objection is preserved for appellate review, without resort to fundamental error analysis, if either the specific ground for the objection is clearly stated or the basis of the objection is apparent from the context. *Id.* Any invocation of the Fifth Amendment right against self-incrimination, also referred to as the right to remain silent, must be clear and unequivocal. *See State v. Payne*, 146 Idaho 548, 558-59, 199 P.3d 123, 133-34 (2008). There is no talismanic phrase or formula that is essential in order to invoke the right. *Emspak v. United States*, 349 U.S. 190, 194 (1955). All that is necessarily is an objection that may be reasonably expected to be understood as an attempt to invoke the right to remain silent. *See id.*

Brown made sufficiently clear his desire to remain silent at sentencing. When asked if he wished to make a statement, Brown said, "No." The district court pressed him, stating, "No? I think you really do need to say it. It may be difficult to say." Thereafter, the following exchange took place:

> [Brown]:       I apologize for everything. I really do.
> [The Court]:   What led you here, Mr. Brown?
> [Brown]:       I don't want to speak.
> [The Court]:   Pardon?
> [Brown]:       I don't want to talk about it.
> [The Court]:   No. I think that's part of it. I think you need to talk about it. It's part of the responsibility.

The State suggests it may be equally likely that Brown was simply waiving his right to allocution. From the context, we can only accept the State's suggestion as to Brown's first response to the district court, wherein after further urging, Brown apologized for his actions. Thereafter, it is apparent from the ensuing dialogue that Brown was objecting to further questioning and invoking his right to remain silent. Brown expressed his desire to remain silent no less than three times (including an additional response not quoted above), all in regards to questions about his motive for committing the crime. Moreover, the statements were not equivocal, but clearly indicated Brown wanted the questioning to cease. *Cf. Payne*, 146 Idaho at 559, 199 P.3d at 134 (finding the statement "I don't think I should answer that" as equivocal and

4

insufficient to invoke the right to remain silent). However, the district court prompted further testimony by Brown. As such, the issue of whether the district court's questioning violated Brown's right to remain silent at sentencing by compelling Brown to testify about his motive is preserved for appellate review.

### 2.    Violation of the right

A guilty plea waives the right against self-incrimination, and this waiver encompasses the sentencing phase. *State v. Jones*, 129 Idaho 471, 475, 926 P.2d 1318, 1322 (1996). As noted above, however, the waiver of the right to remain silent is limited and only precludes a district court from compelling a defendant to testify about matters extending beyond the facts of the offense to which he pleads guilty. *State v. Heffern*, 130 Idaho 946, 948, 950 P.2d 1285, 1287 (Ct. App. 1997). Additionally, a guilty plea does not waive the right against self-incrimination as to all aspects of the crime. *Mitchell v. United States*, 526 U.S. 314, 321 (1999). Rather, the right to remain silent is waived for matters to which the defendant has already testified, and the scope of the waiver is determined by the scope of relevant cross-examination. *Id.* Once the defendant testifies to matters pertinent to the criminal proceedings, he cannot, within the same proceeding, refuse further testimony when questioned about the details. *Id.*

In *Heffern*, 130 Idaho at 949, 950 P.2d at 1288, in considering the permissible scope of inquiry during sentencing, this Court found that although a district court may consider uncharged conduct as a factor at sentencing, a district court violates a defendant's right to remain silent when it requires the defendant to testify about uncharged conduct at sentencing. We determined the uncharged conduct was legally and factually unrelated; the district court was only permitted to inquire about the charged offense to establish a factual basis for the plea and to determine whether the plea was knowingly and voluntarily made. *Id.* We vacated the sentence after concluding the defendant's testimony about the uncharged conduct contributed, in some material degree, to the court's sentencing decision. *Id.* at 950, 950 P.2d at 1289. We have also found that a court violates a defendant's right to remain silent at sentencing when the defendant's silence is used as an aggravating factor in fashioning an appropriate sentence. *See Anderson*, 130 Idaho at 770, 947 P.2d at 1018.

The district court here did not violate Brown's right to remain silent at sentencing. To begin, Brown testified, when he entered his plea, in regards to the motive for the crime.

5

Specifically, upon questioning by the district court, Brown indicated that he was not after the actual victim but a different individual:

> [The Court]: All right.  Mr. Brown, tell me what you did that makes you believe that you are--that you have committed the crime of aggravated battery.
> [Brown]: I hit him with the bat.
> [The Court]: And him being--
> [Brown]: [The victim].
> [The Court]: [The victim]?
> [Brown]: Yes.
> . . . .
> [The Court]: All right.  Why did you do that?
> [Brown]: He--somebody else told [my girlfriend] that he was gonna [sic] kill her kid.
> [The Court]: All right.  So on the occasion of December 23, did [the victim] have a weapon?
> [Brown]: No.
> . . . .
> [Brown]: It wasn't meant for him that this happened.
> [The Court]: The striking wasn't meant for [the victim]?
> [Brown]: No.

Brown's attorney explained that Brown was looking for a different individual because that individual made a threat to harm his girlfriend's child.  Brown mistook the person he battered for the individual who had made the threat.  The district court clarified that it was, nonetheless, an intentional act:

> [The Court]: Okay.  So what--so you may not have known that it wasn't--the person who ended up getting--getting hit wasn't maybe the person you intended, but from what your attorney is saying the facts would show that you intended to strike this individual--
> [Brown]: Yes.
> [The Court]: --with a bat.
> [Brown]: Yes.

Brown's explanation of the crime was also contained within the presentence investigation (PSI) report.  In Brown's version of events given in the PSI questionnaire, Brown indicated that he had intentions of hurting a different individual, not the actual victim, because the other individual had threatened to kill the seven-month-old infant of Brown's girlfriend.  There were at least two other individuals who also participated in the aggravated battery against the victim.  Though the statement from Brown's girlfriend, made on the night of the battery and reflected in police reports, also pointed to a threat made by the intended victim to her child, the stories of the other

6

co-defendants differed as to Brown's motive. However, Brown also asserted in the PSI that he did not tell his co-defendants the reason he was after the intended victim.

Because of differing reports as to Brown's motive, the district court questioned Brown at sentencing as to his reasons for committing the crime. Brown then gave the same explanation that he had provided at the entry of the guilty plea as to why the crime occurred--that an individual threatened his girlfriend's child. The district court pressed Brown for further information: "I'm not sure I believe that. There were a lot of different explanations about why you were after [the intended victim]. The one that made the most sense to me was that you and somebody else thought he'd ratted you out to the cops." The district court went through some of the alternative explanations provided by others in the PSI report and determined that Brown's motive did not "add up." The district court began to review the factors to consider in fashioning an appropriate sentence and then again questioned Brown: "Where would you get the idea to take a bat to somebody instead of a fist, which is bad enough?" Brown attempted to again defend his account of events regarding the threat from the intended victim, and the district court asked Brown to explain:

[Brown]:       It obviously didn't happen, so it doesn't matter.
[The Court]:   I'm wanting to hear what you have to say.
[Brown]:       I don't want to say anything else.
[The Court]:   Is it because it's not true?
[Brown];       No, it's true. You just don't believe it.
[The Court]:   I'm asking you.
[Brown]:       Yes, it's true.
[The Court]:   Why didn't you say this to the presentence investigator?
[Brown]:       I did.

The district court did not dismiss his purported motive outright, but pointed out that there was history between the intended victim and Brown, gleaned through information contained within the PSI report, and that the actions of Brown--meant for the intended victim--appeared to be an act of retaliation stemming from additional circumstances.

Certainly, the district court put considerable pressure on Brown to defend or explain his motive. Nonetheless, Brown had previously testified regarding his motive for committing the crime, and having so testified, he could not, then, in the same course of proceedings rely on the right to remain silent in order to avoid further testifying about the details. The district court's inquiry into the circumstances leading up to the act of aggravated battery was legally and

factually related to the charged offense and fell within the permissible scope of questioning. Moreover, it was well within the province of the court to assess Brown's credibility and whether he took responsibility for the crime in tailoring a sentence appropriate to both the nature of the crime and the character of the defendant. *See State v. Wheeler*, 129 Idaho 735, 739, 932 P.2d 363, 367 (Ct. App. 1997). We find no violation of Brown's right to remain silent at sentencing.

**B.      Abuse of Discretion in Sentencing**

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). In order to prevail on a claim that a sentence is an abuse of discretion, the defendant must show that in light of sentencing criteria, the sentence was excessive under any reasonable view of the facts. *State v. McGiboney*, 152 Idaho 769, 773, 274 P.3d 1284, 1288 (Ct. App. 2012). Where reasonable minds might differ, we respect the discretion of the trial court and will not supplant the trial court's views with our own. *Id*.

Brown argues that the district court abused its discretion in sentencing because it inappropriately limited its own discretion, determining that neither probation nor retained jurisdiction were options due to the nature of the crime, and insufficiently considered mitigating factors. The State responds that the sentence imposed was appropriate in light of the brutal nature of the battery upon the victim and Brown's failure to show the sentence was unreasonable under any view of the facts.

A sentence is not based on sound reasoning when the court puts undue, self-imposed restrictions on its exercise of discretion. *State v. Izaguirre*, 145 Idaho 820, 824-25, 186 P.3d 676, 680-81 (Ct. App. 2008). Still, a sentence need not serve all the sentencing goals nor must the trial court weigh each factor equally. *State v. Dushkin*, 124 Idaho 185, 186, 857 P.2d 663, 665 (Ct. App. 1993). A court does not abuse its discretion in imposing a sentence simply because it treats one factor as the primary objective over that of another goal of sentencing. *See State v. Daniels*, 134 Idaho 896, 902, 11 P.3d 1114, 1120 (2000) (upholding a sentence where the district court decided rehabilitation was a secondary goal to that of deterrence); *State v. Griffin*, 122 Idaho 733, 735-36, 741, 838 P.2d 862, 864-65, 870 (1992) (concluding the sentence, which placed deterrence above rehabilitation for a first-time felony offender, was reasonable, but remanding on a different ground). Nor does a district court abuse its discretion when it fashions a sentence based largely on the nature of the crime standing alone. *See State v. Windom*, 150 Idaho 873, 876, 253 P.3d 310, 313 (2011) (holding that a determinate life sentence for second degree murder based solely upon the nature and gravity of the offense is not an abuse of discretion); *State v. Bush*, 131 Idaho 22, 36-37, 951 P.2d 1249, 1263-64 (1997) (upholding a determinate life sentence for lewd conduct with a minor, which was based primarily on the nature of the offense where the defendant severely beat the child into submission). Being a first-time offender, the good character of the defendant, and expressions of remorse can all be mitigating factors at sentencing. *See State v. Knighton*, 143 Idaho 318, 320, 143 P.3d 23, 25 (2006) (defendant's good character, status as a first-time offender, sincere expressions of remorse and amenability to treatment, and support of family); *State v. Hoskins*, 131 Idaho 670, 673, 962 P.2d 1054, 1057 (1998) (first-time offender); *State v. Shideler*, 103 Idaho 593, 595, 651 P.2d 527, 529 (1982) (character of defendant); *State v. Alberts*, 121 Idaho 204, 209, 824 P.2d 135, 140 (Ct. App. 1991) (remorse and responsibility for actions). Even so, in imposing a sentence, a district may find imprisonment is appropriate where a lesser sentence would depreciate the seriousness of the crime or where imprisonment provides appropriate deterrence for either the defendant or other persons in the community. I.C. § 19-2521(1).

This is Brown's first conviction for a felony offense and he has prior misdemeanor convictions only for nonviolent offenses. At Brown's sentencing, the district court explained that it preferred not to send young offenders without significant records, such as Brown, to prison because community-based programs and rider programs were more effective in

rehabilitating such offenders. The court also recognized that Brown's acceptance of responsibility and guilty plea, given at Brown's arraignment without the benefit of a plea agreement, allowed the case to be expediently handled. Further, the court did not doubt that Brown was remorseful, evidenced by Brown having written apology letters to the victim and his family even before arraignment, or that Brown would "take all of [it] back in a minute." Notwithstanding the mitigating factors and that Brown's explanation of events had remained consistent, the district court found the actions Brown took were not justified under any circumstance. The court determined that because of the nature of the crime, this was not a case where the court would even consider probation or retained jurisdiction despite the lack of a prior significant record. Contrary to Brown's assertions, this reasoned decision by the district court was not an undue restriction on its sentencing discretion, but was a decision made on the basis that Brown hit the victim's face so hard with the wooden bat that the bat broke and Brown still continued to hit the victim in the face after that first blow. The victim sustained significant injuries, including brain damage--resulting in long-term learning disabilities--and emotional, as well as psychological, aftereffects. Notably, the PSI report stated that based on the seriousness of the offense alone, it did not appear that Brown was an appropriate candidate for community supervision and recommended a period of incarceration. In agreeing with that assessment and holding deterrence and a sentence appropriate to the gravity of the crime were the primary factors, the district court imposed the maximum allowable sentence of fifteen years, with four years determinate. We do not find that the sentence is unreasonable under any view of the facts.

## III.
## CONCLUSION

We conclude the district court did not violate Brown's right to remain silent by questioning Brown at the sentencing hearing about his motive for committing aggravated battery. Additionally, we conclude the district court did not abuse it's discretion in imposing Brown's sentence. Therefore, we affirm Brown's judgment of conviction and sentence for aggravated battery with a deadly weapon.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**